THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

**LEONARD MULLINS,**

    **Plaintiff,**

v.                                                  Civil Action No. 3:19cv573

**HARCO NATIONAL
INSURANCE COMPANY,**

    **Defendant.**

## MEMORANDUM OPINION

This matter comes before the Court on two motions:

(1)    Defendant Harco National Insurance Company's ("Harco") Motion for Summary Judgment, (ECF No. 14); and,

(2)    Plaintiff Leonard Mullins' Motion for Summary Judgment, (ECF No. 16).

Harco and Mullins filed Cross-Motions for Summary Judgment pursuant to Federal Rule of Civil Procedure 56.[1] Harco and Mullins each responded to the Cross-Motions. (ECF Nos. 19, 20.) These matters are ripe for disposition.

The Court dispenses with oral argument because the materials before it adequately present the facts and legal contentions, and argument would not aid the decisional process. The

---

[1] Federal Rule of Civil Procedure 56(a) provides, in pertinent part:

(a) **Motion for Summary Judgment or Partial Summary Judgment.** A party may move for summary judgment, identifying each claim or defense . . . on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

Fed. R. Civ. P. 56(a).

Court exercises jurisdiction pursuant to 28 U.S.C. § 1332(a)(1).[2] For the reasons stated below, the Court will grant Harco's Motion for Summary Judgment and deny Mullins's Motion for Summary Judgment.

### I. Procedural and Factual Background

Mullins brings this single count complaint for breach of contract against Harco seeking coverage under a motor vehicle insurance policy for injuries sustained during a physical altercation at a fueling station in West Point, Virginia on June 11, 2015.

#### A. Factual Background[3]

Harco is an Illinois-based insurance company which issued Commercial Package Policy Number CP 00171004 to Evelyn Logging, Inc. ("Evelyn Logging"). On June 11, 2015, the date of the underlying incident, Evelyn Loggings employed Mullins. (Stip. Facts ¶ 3.)

##### 1. The Physical Altercation on June 11, 2015

On June 11, 2015 at 4:47 a.m., while in the scope of his employment for Evelyn Logging, Mullins arrived at a Milby Oil station in West Point, Virginia and began refueling his

---

[2] "The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States." 28 U.S.C. § 1332(a)(1). Mullins is a citizen of Virginia, Harco is a citizen of Illinois, and the Complaint alleges damages exceeding $75,000. (Compl. ¶¶ 2, 7, 27(2), ECF No. 1.)

[3] The Parties have stipulated to a set of agreed to facts. (*See* Stipulation of Undisputed Facts, ECF No. 13.) The Parties have also attached several exhibits to the Stipulation of Undisputed Facts, including the security footage of the physical altercation at the fueling station in West Point, Virginia on the morning of June 11, 2015. (*See id.* Ex. B "Milby Oil Security Footage," ECF No. 13-2.) The Court relies on the Stipulation of Undisputed Facts, along with the Milby Oil Security Footage, in setting forth the undisputed facts for the purposes of the Cross-Motions.
 In recounting the factual history, the Court relates the undisputed facts as articulated in the parties' briefing on both motions for summary judgment. In ruling on each motion, the Court will view the undisputed facts and all reasonable inferences therefrom in the light most favorable to the nonmoving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

commercial Evelyn Logging truck with two fuel pumps. (*Id.* ¶¶ 5–7; Milby Oil Security Footage Ex. A 4:47:00 a.m.) Shortly thereafter, the security footage shows that at 4:50:30 a.m., Charles Alan Webb, a trucker employed by C.P. Anderson Trucking, Inc., and in the scope of his employment, arrived at the same Milby Oil station and exited his C.P. Anderson truck. (Stip. Facts ¶¶ 4, 6; Milby Oil Security Footage Ex B. 4:50:30 a.m.) "A conversation immediately ensued between Webb and Mullins in which Webb confronted Mullins about the manner in which he was fueling his vehicle." (Stip. Facts ¶ 8.) After "Mullins informed Webb that he was using both fuel pumps," Webb requested that Mullins "shut one of them off so Webb could add fuel to his vehicle." (*Id.* ¶ 9.) "Mullins went to the other side of his vehicle, and while Mullins was getting ready to shut off one of the fuel pumps, Webb confronted him about how long he was taking to finish fueling." (*Id.* ¶ 10.) The security footage shows that Webb did not reenter his truck for several minutes. (Milby Oil Security Footage.)

At 4:53:35 a.m., Webb opened the driver's side door of his vehicle to retrieve an item and then immediately closed the driver's side door. (*Id.*) "At approximately 4:54 a.m., Webb and Mullins encountered each other again, in the vicinity of the pumps, as Mullins was about to finish fueling his truck and retrieve his receipt." (Stip. Facts ¶ 11.) Moments later, at 4:54:19 a.m. "[t]he dispute between Webb and Mullins developed into a physical altercation, whereby Webb punched Mullins and threw him to the ground." (*Id.* ¶ 12.) The security footage shows that Webb, during the course of the roughly ten second physical altercation, threw Mullins to the ground further away from Webb's C.P. Anderson vehicle—which remained parked nearby. (Milby Oil Security Footage Ex. B 4:54:19–4:54:29.) As a result of the altercation, Mullins suffered injuries. (Stip. Facts ¶ 15.) Mullins seeks UM coverage from Harco in this action.

3

### 2. The Underlying Lawsuit in Virginia State Court

On June 7, 2017, Mullins filed suit against Webb in the Circuit Court for King William County, Virginia (the "King William Circuit Court"). (Stip. Facts ¶ 19.) On December 27, 2018, after a jury trial, the King William Circuit Court entered a judgment "in favor of Mullins and against Webb in the amount of $1,250,000 for injuries arising from the incident" (the "Judgment"). (*Id.* ¶¶ 20–21.) The Judgment against Webb is final. (*Id.* ¶ 21.) No liability insurance is available to pay for the judgment, and despite Mullins's request, Webb "has not paid any portion of it." (*Id.* ¶¶ 22–23.) Harco, as the insurer for Evelyn Logging, declined to participate in the underlying lawsuit in King William Circuit Court. (*Id.* ¶ 25.)

### 3. The Pertinent Policy Provisions

Harco issued Commercial Package Policy Number CP 00171004 to Evelyn Logging for the policy period of July 10, 2014 to July 10, 2015 (the "Policy"). (Stip. Facts ¶ 1; Compl. Ex. A "Policy," ECF No. 1-2.) At all times relevant to the underlying events, Harco provided insurance under the Policy to Evelyn Logging. The Policy provides that Harco "will pay all sums an 'insured' legally must pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies, caused by an 'accident' and resulting from the ownership, maintenance or use of a covered 'auto.'" (Policy 26.) The Policy further states that coverage applies to "'bodily injury'" to "[a]n 'employee' of the 'insured' arising out of and in the course of: (1) Employment by the 'insured', or (2) Performing the duties related to the conduct of the 'insured's' business." (*Id.* 28.)

The Policy includes a "Commercial Automobile Coverage Part" that contains an "Uninsured Motorists Endorsement (Virginia)" providing uninsured motor vehicle insurance with a limit of $1,000,000 (the "UM Coverage"). (*Id.* 69, 70, 74.) The UM Coverage provision

states that "'We' will pay in accordance with the Virginia Uninsured Motorists Law, all sums the 'insured' is legally entitled to recover as damages from the owner or operator of an 'uninsured motor vehicle.'" (*Id.* 70.) The UM Coverage states, under the section "**Words And Phrases With Special Meaning**," that:

> The following words and phrases have special meaning throughout this endorsement and appear in quotation marks when used:
>
> * * *
>
> 8. 'Insured' means any person or organization qualifying as an Insured in the **Who Is An Insured** section of this endorsement, including the personal representative of any insured. Except with respect to 'our' Limit Of Liability, the insurance afforded applies separately to each insured who is seeking coverage under this endorsement.
>
> * * *
>
> 11. *'Occupying'* means in, upon, *using*, getting in, on, out of or off.
>
> * * *
>
> 14. 'Uninsured motor vehicle' means a motor vehicle
>
> > a. For which
> >
> > > 1. There is no 'bodily injury' liability insurance and 'property damage' liability insurance . . . .
> > >
> > > 2. There is such insurance but the insurer writing the insurance denies coverage for any reason whatsoever . . . .

(*Id.* 69–70 (emphases added).)

The Policy states, under the section "**We Will Pay**" that "'We' will pay in accordance with the Virginia Uninsured Motorists Law, all sums the 'insured' is legally entitled to recover as damages from the owner or operator of an 'uninsured motor vehicle.'" (*Id.* 70.) The Policy defines an Insured as "[a]nyone else 'occupying' a 'covered auto.'" (*Id.*)

5

### B. Procedural History

On August 9, 2019, Mullins filed his Complaint, asking the Court to find that Harco breached its contractual obligations to Mullins—as an employee of Evelyn Logging—and seeking benefits under the Policy in the amount of $1,000,000.00. (*See* Compl. 4, ECF No. 1.) After an Initial Pretrial Conference, the Court set a briefing schedule, (ECF No. 11), and the Parties filed their Stipulation of Undisputed Facts and Cross-Motions for Summary Judgment.

For the reasons stated below, the Court will grant Harco's Motion for Summary Judgment and deny Mullins's Motion for Summary Judgment.

## II. Standards of Review

### A. Rule 56: Summary Judgment

Summary judgment under Rule 56 is appropriate only when the Court, viewing the record as a whole and in the light most favorable to the nonmoving party, determines that there exists no genuine issue of material fact, and that the moving party is entitled to judgment as a matter of law. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–24 (1986); *Liberty Lobby*, 477 U.S. at 248–50.

"A fact is material if the existence or non-existence thereof could lead a [finder of fact] to different resolutions of the case." *Thomas v. FTS USA, LLC*, 193 F. Supp. 3d 623, 628 (E.D. Va. 2016) (citing *Liberty Lobby*, 477 U.S. at 248). Once a party has properly filed evidence supporting its motion for summary judgment, the nonmoving party may not rest upon mere allegations in the pleadings, but instead must set forth specific facts illustrating genuine issues for trial. *Celotex Corp.*, 477 U.S. at 322–24. The parties must present these in the form of exhibits and sworn affidavits. Fed. R. Civ. P. 56(c).

6

A court views the evidence and reasonable inferences drawn therefrom in the light most favorable to the nonmoving party. *Liberty Lobby*, 477 U.S. at 255. Whether an inference is reasonable must be considered in conjunction with competing inferences to the contrary. *Sylvia Dev. Corp. v. Calvert Cty.*, 48 F.3d 810, 818 (4th Cir. 1995). Nonetheless, the nonmoving "party is entitled 'to have the credibility of his [or her] evidence as forecast assumed.'" *Miller v. Leathers*, 913 F.2d 1085, 1087 (4th Cir. 1990) (*en banc*) (quoting *Charbonnages de France v. Smith*, 597 F.2d 406, 414 (4th Cir. 1979)).

In the end, the nonmoving party must do more than present a scintilla of evidence in its favor. *Sylvia Dev. Corp.*, 48 F.3d at 818. Because the parties have provided the Court with stipulated facts and video footage of the incident, (*see* Stipulation of Undisputed Facts, ECF No. 13), the Court relies on those agreed upon facts in resolving the Cross-Motions and reads them favorably to the nonmoving side.

### B. Insurance Contract Interpretation Under Virginia Law

As with other contracts, under Virginia law[4] the Court will interpret an insurance policy "in accordance with the intention of the parties gleaned from the words they have used in the document. Each phrase and clause of an insurance contract 'should be considered and construed together and seemingly conflicting provisions harmonized when that can be reasonably done.'" *TravCo Ins. Co. v. Ward*, 736 S.E.2d 321, 325 (Va. 2012) (quoting *Floyd v. Northern Neck Ins.*

---

[4] The Parties correctly agree that the Court must analyze the UM Coverage in the Policy pursuant to Virginia contract law. *See Klein v. Verizon Commc'ns, Inc.*, 674 Fed. App'x 304, 307–08 (4th Cir. 2017) (finding that a federal court sitting in diversity must apply the choice of law provisions of the state in which it sits, and that under Virginia law "*lex loci contractus* [or the law of the place of the contract] serves as the default rule"); *Buchanan v. Doe*, 431 S.E.2d. 289, 291 (Va. 1993) (finding that under Virginia state law, "the law of the place where an insurance contract is written and delivered controls issues as to its coverage"). (*See also* Mem. Supp. Harco Mot. Summ. J. 5, ECF No. 15; Mem. Supp. Mullins Mot. Summ. J. 7, ECF No. 17.)

7

*Co.*, 427 S.E.2d 193, 196 (Va. 1993)). "It is axiomatic that when the terms in a contract are clear and unambiguous, the contract is construed according to its plain meaning." *Id.* (quoting *Barber v. VistaRMS, Inc.*, 634 S.E.2d 706, 712 (Va. 2006)). "Words that the parties used are normally given their usual, ordinary, and popular meaning. No word or clause in the contract will be treated as meaningless if a reasonable meaning can be given to it, and there is a presumption that the parties have not used words needlessly." *Id.* (quoting *City of Chesapeake v. States Self-Insurers Risk Retention Group, Inc.*, 628 S.E.2d 539, 541 (Va. 2006)).

Where a term is undefined in the contract "'general rules of contract interpretation, and specifically insurance contract interpretation, require' that the term 'be given its plain and ordinary meaning.'" *Travelers Indem. Co. of Am. v. Portal Healthcare Sols., LLC*, 35 F. Supp. 3d 765, 770 (E.D. Va. 2014) (quoting *Solers, Inc. v. Hartford Cas. Ins. Co.*, 146 F. Supp. 2d 785, 792 (E.D. Va. 2001)). "Virginia courts customarily turn to dictionaries for help in deciphering a term's plain meaning." *Id.* (citing cases).

"[T]he insured bears . . . [the] burden to establish a *prima facie* case that coverage should be triggered. In other words, the burden is on the policyholder at the outset to bring him [or her] self within the terms of the policy." *Capitol Prop. Mgmt. Corp. v. Nationwide Prop. & Cas. Ins. Co.*, 261 F. Supp. 3d 680, 689–90 (E.D. Va. 2017). "Virginia has long followed the rule that if the insured fails to fulfill a condition of an insurance policy, the insurer's coverage obligation is not triggered." *Bryan Bros. Inc. v. Cont'l Cas. Co.*, 660 F.3d 827, 830 (4th Cir. 2011) (citations omitted). Courts must consider the "intention of the parties to the insurance agreement in determining the scope of the coverage afforded." *Corriveau v. State Farm Mut. Auto. Ins. Co.*, 836 S.E.2d 694, 697 (Va. 2019) (internal citations omitted). Where an automobile insurance policy is involved, "the critical inquiry is whether there was a causal relationship between the

incident and the employment of the insured vehicle as a vehicle." *Simpson v. Virginia Mun. Liab. Pool*, 692 S.E.2d 244, 247 (Va. 2010).

### III. Analysis

### Mullins Cannot Recover Because Webb Was Not the Operator of An Uninsured Motor Vehicle at the Time of the Altercation

To recover from Harco under the UM Coverage in the Policy, Mullins must demonstrate that at the time of the altercation (1) he was "occupying" a motor vehicle; and, (2) Webb was "the owner or operator of an 'uninsured motor vehicle.'"[5] (Policy 69–70.) Because the Court finds, after reading the evidence in the light most favorable to Mullins, Webb was not "the owner or operator of an 'uninsured motor vehicle'" at the time of the altercation, the Court will grant Harco's Motion for Summary Judgment. (*Id.*)

#### A. Legal Standard: Virginia's Uninsured Motorist Coverage

Virginia's UM Coverage mandates that

> no policy or contract of bodily injury or property damage liability insurance relating to the ownership, maintenance, or use of a motor vehicle shall be issued . . . unless it contains an endorsement or provisions undertaking to pay the insured all sums that he is legally entitled to recover as damages from the owner or operator of an uninsured motor vehicle, within limits not less than the requirements of § 46.2-472.

Va. Code § 38.2-2206. Virginia Code § 46.2-472, in turn, provides that every motor vehicle policy must provide benefits to insureds for injuries "caused by accident and *arising out of the ownership, use, or operation* of such motor vehicle or motor vehicles within the Commonwealth." Va. Code § 46.2-472(3) (emphasis added). Therefore, to recover damages

---

[5] The Parties agree that if either issue is resolved in Harco's favor, the Court must grant summary judgment for Harco. (*See* Harco Mem. Supp. Mot. Summ. J. 6–7, ECF No. 15; Mullins Mem. Supp. Mot. Summ. J. 6, ECF No. 17.) Harco concedes that the Evelyn Logging truck is a "covered auto," (Harco Mem. Supp. Mot. Summ. J. 6 n.1), and it does not dispute that the C.P. Anderson truck driven by Webb was an "uninsured motor vehicle" under the meaning of the Policy, (Policy 69).

against the operator of an uninsured motor vehicle under UM Coverage, the insured's injuries must arise "out of the ownership, use, or operation of" the uninsured motor vehicle. *Id.*

In interpreting Virginia's UM Coverage, the Supreme Court of Virginia has held that a motorist need not "be in actual physical control of the vehicle" to qualify as an operator.[6] *Colonial Ins. Co. v. Rainey*, 377 S.E.2d 393, 396 (Va. 1989). "One's status of 'operator' is not relinquished or lost by merely leaving the vehicle." *Id.* However, in light of the bargained for expectations of both parties, for liability to attach against an uninsured "owner or operator," there must exist a "causal relationship between the incident and employment of the automobile as a vehicle." *Travelers Ins. Co. v. LaClair*, 463 S.E.2d 461, 464 (Va. 1995). Where "the proximate cause [of the injury] is merely incidental or tangential to the ownership, maintenance, or use of the vehicle," the damages are not caused by the vehicle and no liability under the policy can attach. *Erie Ins. Co. Exch. v. Jones*, 448 S.E.2d 655, 659 (Va. 1994). In short, the operator must be using the "vehicle as a vehicle." *LaClair*, 463 S.E.2d at 464. An attenuated connection between the use of the vehicle and the complained injury will not suffice. *See id.*

### B. Webb Was Not an Operator of an Uninsured Motor Vehicle at the Time of the Altercation with Mullins Because He Was Not Using His C.P. Anderson Vehicle as a Vehicle

Viewing the record as a whole and in the light most favorable to Mullins, the Court concludes that Webb was not acting as an "operator" of a motor vehicle under the plain meaning of the Policy at the time of the physical altercation with Mullins.

For an insurance carrier to be liable for damages caused by an uninsured operator under Virginia's UM Coverage, the operator must be using "a vehicle as a vehicle" at the time of the

---

[6] Although a number of other cases in Virginia have analyzed the term "use" as applied to motor vehicle insurance coverage, the Court confines itself to those cases specifically interpreting Virginia's UM Coverage.

10

injury. *LaClair*, 463 S.E.2d at 464. The undisputed evidence demonstrates that, under Virginia law, there was "no causal relationship" between the physical altercation and Webb's employment of the C.P. Anderson truck as a vehicle. *Id.* Furthermore, under binding Virginia Supreme Court precedent, Mullins involvement in the altercation did not render Webb an "operator" under the Policy language or UM Coverage. (Policy 69–70.) Because Mullins injuries were not caused by an accident "arising out of the ownership, use, or operation" of a motor vehicle, Va. Code § 46.2-472(3), he cannot recover under the UM Coverage in the Policy.

### 1. Webb Did Not Utilize His Vehicle During the Attack on Mullins

The stipulated and undisputed facts clearly establish that Webb was not using his vehicle at the time of his fight with Mullins. No Party argues that Webb was "in, upon, *using*, getting in, on, out of or off" the C.P. Anderson truck at the time of the altercation. (Policy 69 (emphasis added).) Webb exited his truck at 4:50:30 a.m. and exchanged words with Mullins moments thereafter. From the time Webb initially got out of his truck until the start of the physical altercation at 4:54:19 a.m., Webb never fully reentered his vehicle, turned it on, or otherwise sought to use the "vehicle as a vehicle." *LaClair*, 463 S.E.2d at 464. More importantly, Webb did not utilize the vehicle, or any component part of the vehicle, during the attack on Mullins. Indeed, the record shows that Webb threw Mullins further away from the truck during the course of the altercation. (Milby Oil Security Footage Ex. B 4:54:19–4:54:29.) The proximate cause of Mullins injuries was a physical altercation which bore little, if any, connection to the presence of an uninsured motor vehicle.

Mullins argues that Webb does not have to be in his vehicle to be an operator and cites the Virginia Supreme Court's decision in *Colonial Insurance Co. v. Rainey* in support. 377 S.E.2d 393. *Rainey*, however, is inapposite. In that case, an uninsured motorist experienced a

11

blowout, and attempted to haul an underinflated tire to a service station so it could be fully inflated. *Id.* at 394. After walking 200 feet from the car, the uninsured motorist slipped, causing the spare tire to fall down a slope and injure another driver. *Id.* The Virginia Supreme Court found the uninsured motorist was an "operator" at the time of the accident because the "accident arose from the maintenance of the vehicle" as the uninsured motorist "was in the process of taking part of the vehicle, the spare tire, to be serviced when the negligent act occurred." *Id.* at 396. Here, by contrast, neither Webb's vehicle nor any component part of the vehicle bore any direct relation to the injuries sustained by Mullins. Webb struck Mullins in hand to hand combat while his vehicle was parked nearby.

Interpreting the language of the Policy in accordance with its "plain meaning" and "the intention of the parties gleaned from the words they have used in the document," *Ward*, 736 S.E.2d at 325, Webb was not an "owner or operator" of an uninsured motor vehicle at the time of the assault, (Policy 70). Webb did not use or otherwise employ his C.P. Anderson truck during his assault on Mullins.

### 2. The Virginia Supreme Court Has Rejected a "But-For" or "Chain of Events" Test for Use of a Vehicle Under an Auto Insurance Policy in Similar Circumstances Involving Criminal Assaults

Mullins counters that the presence of both trucks at the fueling station was the "specific cause of the incident." (Resp. Opp. Harco Mot. Summ. J. 3, ECF No. 20.) Under Mullins theory, Webb's desire to fuel his vehicle and the fueling process as a whole represents one continuous incident leading to the assault. To Mullins, the assault cannot be extracted from Mullins and Webb's use of their vehicles because "the fueling of the vehicle was the entire reason that . . . Mullins was injured." (Mem. Supp. Mullins Mot. Summ. J. 12.)

12

This argument does not persuade. While Webb's motive for assaulting Mullins might have been linked to his desire to fuel his vehicle, it does not render him an operator under the terms of the Policy. Webb's assault, and Mullins's consequential injuries, were related to an uninsured motor vehicle "only by a chronological sequence of events." *Jones*, 448 S.E.2d at 659. Indeed, the Virginia Supreme Court has rejected this "but-for" or "chain of events" approach on several occasions, often in circumstances involving criminal assault.

In *Jones*, the Virginia Supreme Court explicitly considered whether it should adopt such a but-for test, but concluded that "[a] 'but for' analysis is inappropriate to determine whether recovery should be allowed under uninsured motorist provisions of the [policies]. [Instead] [t]he relevant inquiry is whether the chain of events resulting in the accident was unbroken by the intervention of any event unrelated to the use of the vehicle.'" 448 S.E.2d at 658 (internal citations and quotations omitted).

In *Jones*, an uninsured motorist exited his stopped vehicle with a rifle and tapped on the window of another vehicle that had been following closely with "headlights repeatedly raised and lowered." 448 S.E.2d at 656. The rifle discharged, injuring one passenger and killing another. *Id.* The *Jones* Court determined that the uninsured actor was not an "operator" of a motor vehicle at the time, and thus did not fall under the UM Coverage, because the "proximate cause of the wrongful death was a criminal assault, one related to the use of an uninsured motor vehicle only by a chronological sequence of events." *Id.* at 659.

Similarly, in *LaClair*, an uninsured driver conducted a drive by shooting at a police officer from inside his vehicle, injuring the officer. 463 S.E.2d at 462. Observing that the "ordinary meaning of 'use' of a private, passenger motor vehicle does not contemplate its utilization . . . as a shield," the *LaClair* Court determined the assailant was not an operator for the

13

purposes of UM Coverage. *Id.* at 464. Applying the *LaClair* Court's reasoning to the matter at bar, the "ordinary meaning of 'use' of a [truck] does not contemplate" a fistfight during a fuel stop. *Id.*

Most recently, in *Corriveau,* several minors had brutally assaulted a special needs student on a bus. 836 S.E.2d at 696. The Virginia Supreme Court denied coverage under an insurance policy determining there was no "causal connection" between the injuries and the "use of the school bus." *Id.* at 697. The *Corriveau* Court observed that "two passengers who come to blows over an argument in the back seat of an automobile can hardly claim that their resulting injuries arose out of the vehicle's use as a vehicle. In such circumstances, the only relation of the injury to the vehicle is that the latter served as [the] situs or enclosure for the assault, no different from an apartment, an alley, or [an] elevator." *Id.* at 698 (quoting *Doe v. State Farm Fire & Cas. Co.*, 878 F. Supp. 862, 864 (E.D. Va. 1995). As in *Corriveau*, Webb's physical assault of Mullins, only related to a motor vehicle solely by its proximity to the vehicle, "was conduct 'not normally contemplated by the parties to an automobile liability policy.'" *Id.*[7]

As in *Jones*, *LaClair*, and *Corriveau,* Webb's assault, and Mullins's consequential injuries, were related to an uninsured motor vehicle "only by a chronological sequence of

---

[7] Mullins claims *Corriveau* is inapposite because the insurance policy in that case had more restrictive policy language than the Policy at bar, requiring that the injuries "'arise out of the ownership, maintenance, or use' of the uninsured motor vehicle.'" (Mem. Supp. Mullins Mot. Summ. J. 11 (quoting *Corriveau*, 836 S.E.2d at 696). But *Corriveau* merely applied well-settled principles relating to the interpretation of the word "use" of a vehicle, requiring a "causal relationship" between the use of the vehicle as a vehicle and the injuries sustained for coverage to apply. *See, e.g., LaClair*, 463 S.E.2d at 462 (requiring "requisite causal relationship between the incident and employment of the automobile as a vehicle" where policy did not include qualifying phrase "arise out of"). Under Mullins's narrow interpretation of *Corriveau*, an insured could recover under an auto insurance policy for injuries wholly unrelated to their use of a "vehicle as a vehicle" or unrelated to their use of a vehicle at all. *Simpson*, 692 S.E.2d at 247. Such an interpretation would clearly contravene the "intention of the parties to the insurance agreement." *Corriveau*, 836 S.E.2d at 697.

14

events," *Jones*, 448 S.E.2d at 659, and thus fell outside conduct "'contemplated by the parties to an automobile liability policy.'" *Corriveau*, 836 S.E.2d at 698. While Mullins might not have been injured "but-for" Webb's desire to fuel his vehicle, such a "but-for" or "chain of events" causation theory is insufficient to establish liability under Virginia law. Because Virginia courts would find that no causal relationship exists between Mullins's injuries and Webb's use of the C.P. Anderson truck "as a vehicle," Mullins cannot recover from Harco under the Virginia UM Coverage in the Harco Policy. *LaClair*, 463 S.E.2d at 464.

### 3. Mullins Cannot Recover Against Harco Under the Plain Meaning of the Policy and Virginia UM Coverage

The Policy provides that Harco "will pay all sums an 'insured' legally must pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies, caused by an 'accident' and resulting from the ownership, maintenance or use of a covered 'auto.'" (Policy 26.) To recover from Harco under the UM Coverage in the Policy, Mullins must demonstrate that at the time of the altercation (1) he was "occupying" a motor vehicle; and, (2) Webb was "the owner or operator of an 'uninsured motor vehicle.'" (Policy 69–70.)

Interpreting the Policy "in accordance with the intention of the parties gleaned from the words they have used in the document," *Ward*, 736 S.E.2d at 325, the Court concludes that Webb was not an "owner or operator" of an uninsured motor vehicle under the meaning the Virginia UM Coverage in the Policy at the time he injured Mullins, (Policy 70). Accordingly, even viewing the facts in the light most favorable to Mullins, Mullins is not entitled to benefits under the Policy for injuries caused by an owner or operator of an uninsured motor vehicle. Mullins therefore cannot recover against Harco for breach of contract in relation to Harco's refusal to provide him with benefits under the Policy, and summary judgment in favor of Harco is appropriate.

## IV. Conclusion

For the foregoing reasons, the Court will grant the Harco Motion for Summary Judgment and deny the Mullins Motion for Summary Judgment.

An appropriate Order shall issue.

/s/
M. Hannah Lauck
United States District Judge

Date: 09/09/20
Richmond, Virginia